## McMANUS v. EATON, Collector of Internal Revenue.
### No. 3500.

District Court, D. Connecticut.
June 7, 1934.

D. P. O'Connor, of Hartford, Conn., for plaintiff.

George H. Cohen, Asst. U. S. Atty., of Hartford, Conn., and W. B. Duff, Sp. Atty., of Washington, D. C., for defendant.

THOMAS, District Judge.

This is a suit to recover an alleged overpayment of income tax for the calendar year 1922, for which claim for refund was duly filed and rejected. There were originally two issues, first, the amount of profit derived from a sale of real estate at 78–80 Pratt street, Hartford, Conn., for the sum of $195,500; and, second, the amount of loss, if any, sustained by plaintiff in the year 1922 in a transaction listed in his return as "Hartford Post Investment."

As to the first issue, plaintiff claimed, as a basis for determining gain or loss, a fair market value of the real estate at the time of acquisition in 1916, of $165,000, which would show a profit, after deducting an amount of $4,238.50 from the said basis, representing depreciation, of $34,738.50. The Commissioner of Internal Revenue determined that the fair market value of the real estate at the time of acquisition was $109,000. At the trial, the parties stipulated that the fair market value at the date of acquisition was $116,000, and that this amount should be used as the basis for determining gain or loss. On the basis of this stipulation, the profit on the sale of the real estate was $79,500, of which plaintiff's half interest was $39,750.

As to the second issue, I have come to the conclusion that plaintiff and his brother jointly sustained a loss, in their Hartford Post investment, of the sum of $46,859.48, in the calendar year 1922, and that plaintiff's share of this loss was $23,429.74, which he is entitled to deduct from his gross income in computing his income tax for that year.

Plaintiff's brother, Henry McManus, some time prior to 1910, was employed as dramatic and music critic for the Hartford Post. He subsequently became interested in the busi-

ness affairs of this newspaper, and became a stockholder and director of the corporation which published it. He interested plaintiff, who agreed to share equally with him in any investment they might make in the Hartford Post. Plaintiff furnished half of all money invested in or advanced to the publication, and, although all such investments or advances were made in the name of Henry McManus, they were, in fact, joint investments or advances of the two brothers.

The original corporation was known as Hartford Post, Incorporated, a Maine corporation. The principal stockholders, from 1910, were George Landers, John Moran, John Dennis, and Henry McManus. There were other holders of small amounts of stock. By 1919, the small stockholdings, including that of Mr. Dennis, had been absorbed by Landers, Moran, and McManus, and these three owned practically equal interest in preferred and common stock. The interest of Mr. Henry McManus included that of his brother, plaintiff herein, who did not appear openly in the transaction.

Prior to 1919, the McManus brothers' investment in the Hartford Post was $35,875, or $17,937.50 each. At that time the corporation was losing money, and it became evident that a reorganization was necessary. A new corporation was organized, under the laws of Connecticut, called the Hartford Post Publishing Company. This corporation issued $100,000 of preferred stock to Hartford Post, Incorporated, as consideration for the assets, good will, and franchise, which at that time had a fair market value of at least that amount. The McManus share of this preferred stock was $33,333.33, par value, which took the place of the McManus investment, prior to 1919, aggregating $35,875, held by McManus in the old company.

The new corporation issued common stock having a par value of $20,000. Each of the stockholders of the former corporation, Landers, Moran, and McManus, subscribed to one-third of this issue, to be paid for in cash, in order to provide working capital.

The lawyer who organized the second corporation, Stewart N. Dunning, took charge of raising and paying the necessary cash to keep the newspaper going. The only sources of cash were the three stockholders, Landers, Moran, and McManus, who contributed the necessary amounts equally. The $20,000 paid in by them was not enough, so they advanced further amounts to Dunning for necessary disbursements. McManus advanced to Dunning $6,666.66 for his share of the common stock, and $7,953.84 more. In addition, McManus advanced personally, to or for the benefit of the corporation, but not to or through Dunning, the sum of $3,005.65. The total investment in the new corporation by McManus was therefore $17,626.15. This amount, added to the par. value of the preferred stock, $33,333.33, made a total investment by the McManus brothers of $50,959.48.

The Hartford Post Publishing Company remained in business about one year. It operated at a loss continuously, and the stockholders made every effort to negotiate a sale. In order to keep the newspaper going while this was being done, it became necessary to obtain outside financial help. Mr. Dunning and two other individuals, Mr. Holt and Mr. Freeman, put up $15,000, which they borrowed from the City Bank & Trust Company on their joint note for this purpose. There was no definite agreement as to the interest, if any, acquired by these three individuals for this money, but there was a definite oral agreement that they were to be reimbursed out of the proceeds of any sale before any other payments or distribution should be made out of such proceeds.

In May, 1920, Thomas J. Spellacy agreed to buy the physical assets, franchises, and good will of the Hartford Post for $55,000, of which he was to use $13,841.20 to pay the balance due on the purchase price of typesetting machines, and the balance of which $41,158.80 he was to pay to the stockholders. The various interested parties could not agree upon the distribution of the fund of $41,158.-80. Moran claimed the entire amount should be distributed to the stockholders. Dunning claimed that certain charges, including the $15,000 advanced by Dunning, Freeman, and Holt, should be paid first. In order not to hold up the sale to Spellacy, it was agreed that the fund should be deposited with the City Bank & Trust Company in trust, as an escrow, to be paid out when the amounts due the several parties were ascertained. The deposit was duly made, and was not closed out until 1922.

The details of the distribution are not in the record, but the evidence is clear that the McManus share was ascertained to be $4,100, and the McManus brothers received this amount and no more. The estate of Moran received $10,500, probably as a compromise to avoid litigation. The $15,000 advanced by Dunning, Freeman and Holt was repaid with interest. It was decided that they were creditors and not stockholders, as Moran and others had claimed. Landers received $4,100 at

382

the same time as the McManus brothers. The sum of $1,500 was left in the fund to cover any possible further claim that might be made against the fund. I am unable to account from the evidence for the balance of about $7,000, but am convinced that none of it came into the hands of the McManus brothers.

It is evident that the amount of the McManus loss could not be ascertained until 1922, when the settlement of the claim of the Moran estate was made, and they received their final payment.

The McManus brothers therefore lost, in 1922, the difference between their aggregate investment of $50,949.48 and the amount they realized from the sale, as finally determined and paid, $4,100, or $46,849.48 as claimed in the complaint.

Counsel for defendant says that the portion of the loss attributable to preferred stock was not deductible for 1922, for the reason that the preferred stock was issued in consideration of the indorsement of notes of the Hartford Post, Incorporated, and that the loss due to payment of indorsed notes was deducted by plaintiff for 1921. But I find that the consideration for the preferred stock was the prior investment of the McManus brothers in stock and bonds of the Hartford Post, Incorporated. The indorsed notes constituted only a contingent liability and not an investment at the time the preferred stock of the Hartford Post Publishing Company was issued. They became an absolute liability and were paid by the indorsers in 1921, and plaintiff deducted his share of this payment as a loss for that year.

Counsel for defendant also argues that the loss attributable to common stock was not deductible in 1922, for the reason that that stock became worthless prior to 1922, when it was ascertained that the proceeds of the sale would be insufficient to pay the claims of creditors and the preferred stock. The sale did not, however, result in a closed transaction, so far as the McManus brothers were concerned, in 1920, since their share of the proceeds did not become available to them until 1922. The McManus brothers made their returns on the cash receipts and disbursements basis. They sustained no loss on the common stock until their share of the proceeds of the sale of the assets in which their common stock represented an interest, which sale of assets was for a lump sum price, was ascertained and made available to them.

Counsel for defendant argues that there was no closed transaction in 1922, since a balance at $1,500 was left in the fund at the end of that year, and no written release was signed in 1922, but in 1923. However, the McManus brothers received their final payment in 1922, and the transaction was then closed as far as they were concerned. They made no claim to any portion of the $1,500 left in the fund to cover contingencies.

Counsel for defendant further argues that advances made to the corporation were debts, which were not ascertained to be worthless or charged off in 1922. They were certainly ascertained to be worthless, to the extent that they exceeded $4,100 in 1922. Plaintiff did not keep a set of books. Hence the charge off provision of the law (Revenue Act 1921, § 214(a) (7), 42 Stat. 239, 240) is inapplicable. The law does not require that the amount of the worthless indebtedness be ascertained within the taxable year, but merely that its worthlessness be ascertained. The aggregate amount was capable of computation within the taxable year. It was not dependent upon the happening of any event after the close of the year.

Counsel for plaintiff will prepare findings of fact and conclusions of law in accordance with this opinion, and counsel for plaintiff and defendant will agree upon a computation of the tax and the amount to be used in the final decree.